Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1498 | **DATE** | 2/25/2002 |
| **CASE TITLE** | Robert B. Crudup vs. Christopher Barton, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for judgment on the pleadings [75-1] is granted in part and denied in part. Counts VII and IX are dismissed. Counts I and II are dismissed as to defendant Barton in his official capacity. Plaintiff's prayer for punitive damages is stricken from all counts except counts I and II. In all other respects, the motion is denied.

(11) ■ [For further detail see order attached to the original minute order.]

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
Notified counsel by telephone.
✓ Docketing to mail notices.
Mail AO 450 form.
Copy to judge/magistrate judge.

courtroom deputy's initials: RJ/ea

Date/time received in central Clerk's Office

FEB 27 2002 date docketed
docketing deputy initials: CM

Document Number: 84

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
FEB 27 2002

ROBERT B. CRUDUP,  )
)
Plaintiff, )
v. )
) Case No. 98 C 1498
CHRISTOPHER BARTON, Individually, and in )
his official capacity as Deputy Police Chief for the )
City of Harvey, Illinois; NICKOLAS GRAVES, )
Individually, and in his official capacity as Mayor ) Judge Joan B. Gottschall
of the City of Harvey, Illinois, and THE CITY OF )
HARVEY, Illinois, a Municipal Corporation, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert B. Crudup pursues federal civil rights and state tort law claims against the City of Harvey, Harvey's deputy police chief Christopher Barton, and Harvey's mayor Nikolas Graves. Robert Crudup alleges that he was harassed, arrested, imprisoned, and prosecuted because of his political support for his son, Daryl Crudup, an aldermanic candidate opposed by Graves. The defendants have moved for judgment on the pleadings as to all counts. Fed. R. Civ. P. 12(c). For the reasons set forth below, the motion is granted in part and denied in part.

### I. Background[1]

In January 1996, an alderman spot opened up in the City of Harvey. At every regularly scheduled meeting from February through September, the city council refused to consent to Mayor Graves' proposed replacement, James Sims. The city held an election to fill the vacancy

---

[1] For purposes of this motion, the court takes the well-pleaded allegations in the plaintiff's complaint as true. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993).

on April 1, 1997; the two names on the ballot were James Sims, who had Graves' continued support, and Daryl Crudup. Deputy Police Chief Barton was aware that Graves supported Sims' candidacy because of several public statements that Graves had made expressing strong support for Sims, his opposition to any other candidate, and "strongly worded comments about persons opposing his nomination of Sims." (Compl. ¶ 10.) Also, Barton, Graves, and Sims had met at the Denver Restaurant on several occasions between late September 1996 and election day. Robert alleges, on information and belief, that Barton and Graves reached an agreement to harass and stifle supporters of Sims' opponent.

Barton and other officers therefore engaged in a series of deliberate and intentional acts to harass supporters of Daryl, to suppress public support for Daryl, and to help Sims win. First, on March 29, 1997 (three days before the election), Barton directed several police officers to issue three bogus traffic citations and falsely arrest James E. Boone, who was passing out campaign literature for Daryl. Boone's car, which was lawfully parked and which contained campaign materials, was confiscated and impounded. Attempts by Boone's father to retrieve the car were rebuffed by police officers who falsely claimed that the car was stolen. When he returned home, Boone's father suffered a heart attack and died shortly thereafter.

Second, at 9:45 A.M. on election day, Barton ordered Iasaih Lewis, one of Daryl's campaign workers, to move a mini-bus that was being used by the campaign, even though the vehicle was lawfully parked. After ascertaining that Lewis did not have his driver's license, Barton asked Lewis, who was standing next to the mini-bus, to move it, then Barton had Lewis arrested for driving without a license and leaving a vehicle unattended and had the vehicle impounded until after the election. Barton knew that the mini-bus contained campaign literature,

2

had been transporting senior citizens campaigning on behalf of Daryl for several weeks, and was being used that day to transport senior citizens to and from polling places.

The incident at the heart of this lawsuit began forty minutes earlier, when Barton, in plain clothes and an unmarked vehicle, pulled into a parking lot where plaintiff Robert was lawfully parked. The lot was near one of the busiest intersections in the city, and a trailer hitched to Robert's Blazer prominently displayed several "Elect Daryl Crudup 3rd Ward Alderman" signs.[2] Without identifying himself, Barton approached the driver's side of the Blazer and began to verbally harass Robert. Robert, who assumed Barton was a Sims supporter there to harass him because of his highly visible campaign signs, drove away from the lot to his home, complying with all traffic laws along the way. Barton followed Robert to his home, radioed for backup, and had Robert arrested on false charges of making an improper U-turn, attempting to elude police, reckless driving, and disobeying a stop sign. Barton ordered the Blazer and attached trailer confiscated and impounded. Robert was taken to the police station, where he was handcuffed to a prisoner's bench for approximately three hours. After experiencing severe chest pains at the station, Robert was released into the custody of paramedics. Robert remained in the hospital until the following day. On February 5 and 6, 1998, Robert stood trial on the false charges. He was acquitted on all counts.

Robert filed his first complaint in this action on March 11, 1998. In the answer, the defendants asserted several affirmative defenses, including qualified immunity for Barton, the nonexistence of a municipal policy, the existence of probable cause for Robert's arrest, Illinois

---

[2]Notably, when Graves observed this display the previous day, he gave Robert a long intimidating stare, mumbled "I'll be damned. What in the world has that guy got," and then sped away in the car he was driving. (Compl. ¶ 87.)

3

statutory immunity, and the impermissibility of punitive damages. The defendants simultaneously filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which was limited to the two section 1983 claims against Graves—counts VII and IX. On March 15, 1999, the court granted the motion without prejudice on the ground that in these counts Robert had merely recited the applicable legal standards and prefaced them with a statement that Graves had violated them. Robert reasserted these claims in an amended complaint.

Robert's first amended complaint alleges First and Fourth Amendment violations of 42 U.S.C. § 1983 against Barton (counts I and II); state tort claims for false arrest (count III), false imprisonment (count IV), malicious prosecution (count V), and intentional infliction of emotional distress (count VI) against Barton; a violation of section 1983 by Graves (count VII); a violation of section 1983 based on municipal customs, policies, and practices against the City of Harvey (count VIII); and a section 1983 conspiracy violation against Barton and Graves (count IX).

The defendants' new answer included the same affirmative defenses, but this time they pursued discovery and eventually filed a summary judgment motion rather than a motion to dismiss. Although the defendants sought summary judgment in their favor on all counts, the court entered it only on the claims against Graves in his individual capacity. *Crudup v. Barton*, No. 98-C-1498, 2000 U.S. Dist. LEXIS 16620 (N.D. Ill. Oct. 23, 2000). Of particular note, the court held that the question of whether Barton had probable cause to arrest Crudup was disputed and that there was sufficient evidence of a municipal "policy, custom, or pattern" of harassing the mayor's political opponents to support section 1983 liability against the city. *Id.* at *12-14. The defendants did not request reconsideration of the summary judgment ruling. Instead, almost

eight months later, they repackaged some old legal arguments and raised several new ones in the current motion for judgment on the pleadings.

## II. Analysis

The applicable standard on a rule 12(c) motion is generally the same as on summary judgment, except that the court considers only the contents of the pleadings. The question is whether, accepting the non-movant's version of disputed facts, the movant is entitled to judgment as a matter of law. However, if the defendant is using a rule 12(c) motion "after the close of the pleadings to raise various rule 12(b) defenses regarding procedural defects, . . . courts apply the same standard applicable to the corresponding 12(b) motion." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993).

First, a procedural note. It is highly irregular for one party to file a motion for judgment on the pleadings *after* a motion for summary judgment. In effect, the movant takes a step backward, arguing that the pleadings demonstrate what the more complete record did not—namely, that he is entitled to judgment as a matter of law. This approach would be perfectly appropriate if intervening case or statutory law conclusively established or foreclosed a cause of action. Otherwise, something is wrong. If the court committed an error of law in its summary judgment ruling, the aggrieved party should have timely moved for reconsideration. New legal arguments based on pre-existing law are disfavored, although not always prohibited, because the movant should have raised all his legal arguments at once. *Cf. Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961) ("While we certainly do not approve in general the piecemeal consideration of successive motions for summary judgment, since the defendants might well normally be held to the requirement that they present their strongest case for summary

5

judgment when the matter is first raised, we do not believe the rules prohibit consideration by a trial court of a second motion of this nature."). Waiting until after discovery to raise objections based on the pleadings in some circumstances will constitute an abusive delay tactic and result in waiver of arguments for pre-trial purposes. *Cf. Skrtich v. Thornton*, No. 00-15959, 2002 U.S. App. LEXIS 1210, at *21-25 (11th Cir. Jan. 29, 2002) (refusing to entertain a third motion to dismiss that raised a new legal theory and was filed after an answer, the taking of a plaintiff's deposition, and withdrawal of a motion for summary judgment). Finally, denial of a defendant's motion for summary judgment on a claim necessarily implies that pleading deficiencies could be cured by amendment. The best a defendant can hope for in such circumstances is dismissal without prejudice.

In any event, Robert does not object to the timing of this rule 12(c) motion, so the court will evaluate its merits.

### A. Section 1983 Claims Against Barton

The defendants argue first that Barton is shielded from liability on counts I and II pursuant to the absolute immunity available to testifying witnesses. It is true that witnesses who give testimony "under oath and subject to cross-examination" are absolutely immune from section 1983 liability derived from that testimony. *Curtis v. Bembenek*, 48 F.3d 281, 285 (7th Cir. 1995). This common law doctrine stems from concern that "a witness who was apprehensive about subsequent damages liability might be reluctant to testify, or if the witness did testify, might distort his or her testimony because of fear of liability." *Id.* at 283 (citing *Briscoe v. LaHue*, 460 U.S. 325, 333 (1983)). Cross-examination and prosecution for perjury, not civil liability, are the means employed to induce truth-telling in court.

6

A necessary premise for the defendants' theory is that the claims against Barton are based on Barton's allegedly perjured testimony during Robert's February 1998 trial. This premise is false. For starters, the complaint does not allege that Barton ever testified. And while one can reasonably infer that Barton did testify during the trial, that testimony is not the source of Robert's claims. Rather, counts I and II derive from Barton's actions on April 1, 1997: the alleged harassment, arrest, and imprisonment of Robert, and the related confiscation and impoundment of his Blazer and trailer.[3] Immunity for perjured testimony does not extend to a claim of false arrest. *Juriss v. McGowen*, 957 F.2d 345, 348 (7th Cir. 1992).

The defendants' second argument is a rehash and expansion of their summary judgment contention that Barton had probable cause to arrest Robert. As noted above, in denying summary judgment this court held that because Robert's alleged traffic violations were disputed, so too was the issue of probable cause. 2000 U.S. Dist. LEXIS 16620, at *14. With respect to the summary judgment record, at least, that ruling is now the law of the case. *See generally Curran v. Kwon*, 153 F.3d 481, 487 (7th Cir. 1998). The defendants should have included all of their legal arguments on this point when they first raised it.

---

[3]Why the defendants confine this argument to counts I and II is a bit of a mystery since the doctrine of absolute immunity for a testifying witness derives from common law, not section 1983. Almost as an aside, the defendants do suggest in this section that the state law malicious prosecution claim (count V) fails on the theory that police officers share prosecutors' absolute immunity from this type of claim. The case they cite, *Albright v. Oliver*, 510 U.S. 266 (1994), provides no support for this proposition. To the contrary, the Court noted that a malicious prosecution claim against a police officer had been dismissed by the district court *without prejudice*, which is inconsistent with the defendants' theory of absolute immunity. *Id.* at 270 n.3 (dicta). In *Malley v. Briggs*, 475 U.S. 335, 340 (1986), the Court expressly held that a police officer who acted as a complaining witness was not immune from liability for malicious prosecution.

7

In any event, the new theories lack merit. The defendants now contend that Barton had reasonable suspicion to stop Robert because he claims to have seen a vehicle similar to Robert's make an illegal U-turn prior to pulling into the parking lot. The problem for the defendants is that this assertion of fact does not appear in the complaint. Indeed, the complaint alleges that the charge of an illegal U-turn was false. (Compl. ¶ 32.) To the extent the defendants assert this new fact in their answer, the court may not consider it on a rule 12(c) motion. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368, at 529 (3d ed. 1990) ("[W]hen material issues of fact are raised by the answer and defendant seeks judgment on the pleadings on the basis of this matter, his motion cannot be granted.").[4]

On the erroneous assumption that they have established reasonable suspicion for the initial stop, the defendants move on to the arrest. Their new theory here is that the complaint establishes that Robert, by driving away from Barton, eluded a police officer in violation of 625 ILCS 5/11-204 (West 1993). This theory is, quite frankly, absurd. At the time of Robert's arrest, section 11-204 provided, in relevant part:

> Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, wilfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer, is guilty of a Class B misdemeanor. . . . Provided, the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue

---

[4]An alternative would be to convert the rule 12(c) motion into a motion for summary judgment. But the U-turn is clearly a disputed issue of fact. As an aside, the court notes that Barton's suggestion that he may have seen a different, but "similar," vehicle make the illegal U-turn seems implausible in light of the highly visible and unique trailer Robert was pulling at the time.

8

>            lights which when used in conjunction with an audible horn or
>            siren would indicate the vehicle to be an official police vehicle.

*Id.* 5/11-204(a). The complaint alleges that Barton was dressed in civilian clothing and did not identify himself as a police officer or show any identification, and that the vehicle Barton was driving was not marked with any police insignia.[5] (Compl. ¶ 25.) Accepting these allegations as true, as the court must, Robert did not violate section 11-204.

The defendants present qualified immunity as an alternative defense, but merely reiterate their argument that Barton had probable cause to arrest Robert. Some case law does suggest that the existence of probable cause entitles an arresting officer to qualified immunity. *See, e.g., Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). But it is more accurate to describe probable cause as an absolute bar to recovery because the Fourth Amendment only protects against arrests made in the absence of probable cause. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). Qualified immunity properly applies only to an arresting officer who falsely but reasonably believed that probable cause existed. The defendants cite case law on this point, but do not argue that Barton had a false but reasonable belief in probable cause. The argument is therefore waived. Even assuming no waiver, the argument fails. In light of the discussion above, it was not reasonable (on the facts alleged in the complaint) for Barton to believe that Robert illegally eluded a police officer.

Neither was it objectively reasonable for Barton to think Robert was driving recklessly. *See* 625 ILCS 5/11-503(a) (West 2001 Supp.) (reckless driving is committed when one "drives

---

[5]In a footnote, the defendants assert that the Boone and Lewis incidents do not shed light on Barton's intent with respect to Robert. But evidence of these incidents easily clears the relevance hurdle: that Barton harassed and arrested others he knew to be supporters of Daryl makes it more likely that he harassed and arrested Robert for the same reason.

9

any vehicle with a willful or wanton disregard for the safety of persons or property"). First, the complaint clearly suggests that Robert did not drive recklessly. (Compl. ¶¶ 28, 32.) Second, the fact that Robert started his vehicle in motion when another person was nearby was not sufficient to form the basis of a reckless driving conviction. If it was, no driver could ever leave a busy parking lot without breaking the law. The cases cited by Barton are easily distinguishable. In *People v. Stropoli*, 497 N.E.2d 194, 195-96 (Ill. App. Ct. 1986), the defendant drove forward and reverse at high rates of speed, squealed the tires, drove in the wrong lane, and, while fishtailing, drove with the front end of his vehicle aimed at a small child who was standing near the curbless street. In *People v. Tuell*, 423 N.E.2d 954, 955 (Ill. App. Ct. 1981), the complaining witness testified that the car accelerated as it came straight toward her, right down the center of the street, and moved at 30 mph (in a 25-mph zone). It is not reasonable to infer from these cases that merely pulling out of a parking space when a pedestrian is near the side of the vehicle, which is all that appears in the complaint, constitutes reckless driving.

## B. Illinois Tort Claims Against Barton

First, the defendants argue that Barton is absolutely immune from liability on the state law counts (III through VI) pursuant to Illinois statute. Section 2-201 of the Illinois Local Government and Governmental Employees Tort Immunity Act (the "Tort Immunity Act") provides:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201 (West 1993). The Illinois Supreme Court has made clear that a public employee is granted immunity under section 2-201 only if the plaintiff's injury results from conduct that is *both* an exercise of discretion *and* a determination of policy. *Harinek v. 161 N. Clark Street Ltd. P'ship*, 692 N.E.2d 1177, 1181 (Ill. 1998). The defendants themselves argue in a later section that Barton is not a policymaker for the City of Harvey. (Memo. at 12.) In any event, it would seem self-evident that the act of harassing and arresting one individual, even if it reflected a broader informal policy or custom, *see infra*, did not by itself *determine* police or city policy.

But the Illinois Supreme Court appears to take a broader view of "determining policy" under section 2-201. The court defines "policy decisions as those that require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Harrison v. Hardin County Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 852 (Ill. 2001). A single discretionary decision without general applicability sometimes qualifies. In *Harinek*, for example, the court held that a fire marshall's decision as to where a particular group of individuals was to stand during a particular fire drill was a "determination of policy." 692 N.E.2d at 1181-82; *see also Harrison*, 758 N.E.2d at 853 (holding that a principal's decision affecting just one student was a determination of policy). One can question the wisdom of these decisions, *see, e.g., Harinek*, 692 N.E.2d at 1187 (Harrison, J., dissenting), but they constitute controlling Illinois law.

Drawing on this line of cases, the defendants argue that section 2-201 immunizes Barton from state tort law liability. The decision whether to arrest Robert certainly involved the exercise of discretion and, based on *Harinek* and *Harrison*, may have been "determining policy." But this

11

argument overlooks the first six words of the section: "[e]xcept as otherwise provided by Statute." The very next section of the Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law *unless* such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (emphasis added). This more specific statutory provision controls. *See Bowes v. City of Chicago*, 120 N.E.2d 15, 32 (Ill. 1954) ("Where there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates only to one subject, the particular provision must prevail . . . ."). Robert alleges that Barton's conduct was willful and wanton, so the Tort Immunity Act does not shield Barton from liability.

Second, the defendants argue that Robert fails to state a claim for intentional infliction of emotional distress (count VI). This argument could have been brought earlier on a rule 12(b)(6) motion, so that standard applies.[6] *Alexander*, 994 F.2d at 336. The purpose of a motion to dismiss under rule 12(b)(6) is to test the sufficiency of the complaint, not the merits of the suit. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The

---

[6]The defendants muddy the waters by relying on a fact outside the complaint—*viz.*, their allegation that Barton observed Robert making an illegal U-turn. (Memo. at 11.) The court declines the implicit invitation to convert this motion into one for summary judgment. The defendants chose not to present this argument in their summary judgment motion, and, as a result, the plaintiff has had no reasonable opportunity to present materials in support of his intentional infliction of emotional distress claim. *Cf.* Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

12

defendants cannot meet this standard. To recover for intentional infliction of emotional distress, a plaintiff must show: (1) that the defendant's conduct was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant's conduct was such that he knew that severe emotional distress would be substantially certain to result. *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1115 (Ill. App. Ct. 1999). Robert alleges that he was assaulted, followed, and wrongfully imprisoned, that his vehicle was impounded, that he suffered severe chest pains leading to hospitalization, and that he was forced to stand trial before a jury on trumped up charges. These allegations, standing alone, may or may not support recovery, but they do not foreclose that possibility. As the only federal case relied upon by the defendants recognizes, "[u]nder the federal system of notice pleading, [the plaintiff] may not [be] obliged to allege every action that he claim[s] inflicted emotional distress." *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998).

The defendants offer an alternative, but equally unconvincing, reason to dismiss this claim. Section 4-103 of the Tort Immunity Act immunizes public employees from liability "for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein." 745 ILCS 10/4-103. At best, this section gives the defendants a relevance objection to certain evidence concerning Robert's detention. Count VI, however, is not derived solely from Robert's period of confinement in the police station—rather, the claim as pleaded encompasses all of the operative facts alleged in paragraphs 1 through 42 of the complaint. The court therefore rejects the defendants' request for judgment in their favor on count VI.

13

### C. Section 1983 Claim Against the City of Harvey

Respondeat superior is not available on a section 1983 claim against a municipal defendant. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). In order to recover against a city under section 1983, a plaintiff must show that the violations resulted from either (1) "an express policy," (2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law," or (3) "the actions of a person with final policymaking authority." *Looper Maint. Serv. v. City of Indianapolis*, 197 F.3d 908, 912 (7th Cir. 1999) (internal quotation marks and citation omitted). The defendants argue that Robert's claims against the city must be dismissed because he has not adequately pleaded any of these theories.

A preliminary note concerning what is at stake. This court has already held, based on the summary judgment record, that a genuine factual dispute exists as to whether the city had a sufficiently well-entrenched "policy, custom, or pattern" of political harassment to hold the city liable. 2000 U.S. Dist. LEXIS 16620, at *12-14. Assuming no error or change of law, the best the defendants can hope for from this argument is dismissal without prejudice so that Robert could include in his complaint the allegations that convinced this court not to enter summary judgment. Specifically, the summary judgment decision relied on statements of city alderman indicating an awareness of systematic harassment. The complaint is devoid of any such allegation, so Robert might be required to amend. For the reasons that follow, however, he will not be.

The defendants' argument is that Robert, by inadequately alleging a city policy or practice, fails to state a claim against the city. This is a rule 12(b)(6) motion in rule 12(c)

14

clothing, so the 12(b)(6) standard applies. *McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000), makes clear that even a "smattering of [conclusory] phrases" alleging *Monell* liability is sufficient to overcome a motion to dismiss. Robert easily clears this low hurdle. Not counting the heading of count VIII, the complaint refers to the customs, policies, and practices of the city five times. (Compl. ¶¶ 3, 4, 5, 39, 97.) There is little doubt that the city was reasonably apprized of Robert's theory of this claim. No more is required.

The defendants' reliance on *Latuszkin v. City of Chicago*, 250 F.3d 502 (7th Cir. 2001), is misplaced. There, the critical failing was that the plaintiff sued the *city* but claimed no more than a policy or custom of the *police department*. Nothing in the complaint suggested a link between the defendant city and the alleged police practice. *Id.* at 505. In contrast, Robert alleges that his injuries derived from "the official policy of the City of Harvey." (Compl. ¶ 97.)

Although the court does not believe it is necessary to decide this motion, there is another sufficient justification for municipal liability. The complaint alleges that Mayor Graves was not only aware of and deliberately indifferent to the political harassment policy but actively encouraged it.[7] Without citing any legal authority, the defendants assert that the city council, not the mayor, sets city policy. At least with respect to law enforcement, this assertion is almost certainly false. In determining who counts as a final policymaker, courts look to state law. *See City of Saint Louis v. Prapotnik*, 485 U.S. 112, 125 (1988) (plurality); *see also Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701 (1989) (adopting *Prapotnik* plurality). "The corporate authorities of each municipality may prescribe the duties and powers of all police officers." 65

---

[7]It is true that this court found insufficient proof of this allegation for the claims against Graves as an individual to withstand summary judgment, but the court's consideration of the present motion is confined to the pleadings.

15

ILCS 5/11-1-2 (West 1993).[8] "Corporate authorities," in turn, includes both "the mayor and aldermen." *Id.* 5/1-1-2(2). Either as instigator or as condoner, Graves therefore provides the requisite connection to the city for *Monell* purposes.[9]

The defendants' related argument that legislative immunity somehow protects the city rests on a false premise. The policy at issue is political harassment, not the city's vehicle code. Again, the defendants err in assuming, contrary to the allegations in the complaint, that Robert actually committed traffic violations.

### D. Other Arguments

The defendants argue that the claims against Barton and Graves in their official capacities are redundant in light of the claim against the municipality and should therefore be stricken. Robert counters that the defendants waived this argument by not moving to strike under Fed. R. Civ. P. 12(f) prior to answering the complaint. Even if the defendants' request is construed as a motion to strike rather than a motion to dismiss, rule 12(f) specifically provides that the court, on its "own initiative at any time," may strike any redundant matter. The court will therefore consider the alleged redundancy.

It is true that official capacity suits may be redundant with suits against the relevant governmental entity. *See Smith v. Metro. Sch. Dist. Perry Township*, 128 F.3d 1014, 1021 n.3

---

[8]Effective December 1, 1997, this section was amended to include several specific statutory powers. 65 ILCS 5/11-1-2(a), (b) (West 2001 Supp.). Still, the statute makes clear that "[t]he corporate authorities of each municipality may prescribe any additional duties and powers." *Id.* 5/11-1-2(c).

[9]In light of *Harinek* and *Harrison, see supra,* one could even argue that Barton counts as a final policymaker under Illinois law, thereby subjecting the city to *Monell* liability. This court expresses no opinion on the matter.

16

(7th Cir. 1997). Here, some of the official capacity claims are redundant; others are not. Counts I and II allege that Barton violated the First and Fourth Amendments, respectively. Each count is premised on paragraphs 1 through 42 of the complaint, plus paragraphs 44 through 47 or 48 through 53, respectively. Graves is the sole defendant in count VII, which alleges constitutional violations—without distinguishing between the First and Fourth Amendment theories (both of which technically arise under the Fourteenth Amendment anyway)—and is based on paragraphs 1 through 94. The City of Harvey is a named defendant only in count VIII. This count also alleges constitutional violations, again making no distinction between theories, and is based on paragraphs 1 through 98. Count VIII therefore fully encompasses the legal theories and factual allegations contained in the official capacity components of counts I, II, and VII. Counts I and II will therefore be dismissed as to Barton in his official capacity. This court has already granted summary judgment on count VII in favor of Graves in his individual capacity, so the remainder of that count is now dismissed. (The factual allegations, of course, remain in the complaint as incorporated by later counts.) Finally, the state law claims against Barton the official, counts III through VI, are not redundant because there are no parallel claims against the city.

The defendants next launch two separate attacks on count IX of the complaint, neither of which needs to be considered. Robert retreats in his response by requesting permission to voluntarily dismiss the count. Permission is hereby granted, and the count is dismissed.

The final bone of contention is punitive damages. In his response brief, Robert clarifies that he seeks punitive damages only against Barton *in his individual capacity* for the alleged violations of constitutional rights, counts I and II. *See Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991) ("Punitive damages may be recovered in an individual capacity suit under the

17

traditional bad faith standard, and are recoverable against a governmental official acting in his individual capacity where the officer acts under color of state law and in bad faith.") (internal quotation marks and citation omitted). The defendants' reply therefore misses the mark: it argues only that damages cannot be recovered against a city employee sued *in his official capacity* if they are not available against the municipality. The request for punitive damages in counts I and II will stand.

### III. Conclusion

For the reasons set forth above, counts VII and IX are dismissed. Counts I and II are dismissed as to defendant Barton in his official capacity. Robert's prayer for punitive damages is stricken from all counts except counts I and II. In all other respects, the defendants' motion for judgment on the pleadings is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: February 25, 2002